Filed 9/15/25  Sobhani v. Zolo Ventures CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| PAREE SOBHANI, as Trustee, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ZOLO VENTURES, INC.,<br><br>    Defendant and Appellant. | 2d Civ. No. B340467<br>(Super. Ct. No. 24CV01611)<br>(Santa Barbara County) |

Zolo Ventures, Inc. appeals from a judgment entered against it after a court trial on Paree Sobhani's commercial unlawful detainer action.  Zolo contends the trial court erroneously found a notice to pay or quit compliant with Code of Civil Procedure section 1161, subdivision (2) (hereafter section 1161(2)).  We affirm.

FACTS AND PROCEDURAL HISTORY

In 2021, Zolo, as the tenant, entered into a five-year lease agreement with Sobhani, as the landlord, whereby Zolo agreed to

rent a 14,455-square-foot office building (the property). William Quiros signed the lease agreement on Zolo's behalf.

Zolo paid the rent for the first year of the lease term. The parties later verbally renegotiated the lease, with Sobhani permitting Zolo to pay rent on the 15th of each month and deferring a portion of the rent until the end of June 2023. Zolo complied with these new terms until April 2023, when Quiros informed Sobhani that the sheriff had frozen his assets, and that he was having difficulty meeting his lease obligations. Zolo paid a portion of the April 2023 rent in April, and a portion in June 2023. Sobhani received no further rent from Zolo after June 2023.

In December 2023, Sobhani and Quiros met in person, and Quiros informed Sobhani that he anticipated paying her after a hearing regarding unfreezing his assets. Sobhani agreed to give Zolo through January 2024 to pay the rent but requested the property's keys be returned to her if the rent was not paid. Quiros agreed.

Zolo did not pay any rent in January 2024 and continued to maintain possession of the property. In February 2024, Sobhani served Zolo with a "three-day notice to pay rent or quit premises" (the notice). The notice demanded Zolo pay $379,608 in unpaid rent within three days or quit the premises. The notice stated: "The payment shall be made to Paree Sobhani at 204 Rametto Road, Santa Barbara, CA 93108, 805-705-3674, in cash or certified funds."

Zolo did not attempt to pay any of the outstanding rent and did not quit the premises. Sobhani subsequently filed an action for unlawful detainer.

2

Quiros did not appear at the court trial. Through Quiros's earlier deposition testimony, Zolo conceded it had not paid any rent from May 2023 through February 2024; that Sobhani never rejected any rent Zolo attempted to pay; and that after April 1, 2023, Zolo never attempted to personally deliver rent to Sobhani.

Sobhani testified the Rametto Road property is her office and her parents' home. Zolo's counsel asked, "Could Mr. Quiros have paid the rent demand and leave [*sic*] the notice at [the Rametto Road] address in person?" Sobhani answered, "Yes."

During closing arguments, Zolo's counsel argued the notice was insufficient because it did not contain the usual days and hours that a person would be available to receive Zolo's payment if made in person. The trial court requested further briefing on the issue of the notice's validity. After further briefing, the trial court entered judgment in Sobhani's favor in the amount of $596,275.80.

The trial court found the notice complied with section 1161(2) because it contained the information required by the statute, including the amount due, and the name, telephone number, and address of the person to whom rent was to be paid. And based on her testimony, the court found that Sobhani "would have been willing to receive the rent due personally." It also found that Sobhani's "personal willingness to cooperate should not suffice to allow an open-ended schedule, nor should it trigger a responsibility to have specified [in the notice to quit] when she could conveniently be present at the stated address."

The trial court concluded there was "nothing unusual" in the notice "that would specifically indicate that personal delivery was an option." Zolo "had all the information necessary to mail the required rent payment and maintain possession" and "there

3

was every opportunity to mail the rent had it been available and that was all that the Notice on its face required."

Zolo subsequently filed motions for new trial and to set aside and vacate the judgment. The trial court denied both motions.

DISCUSSION

Zolo contends the judgment must be reversed because the notice was defective.[1] We are not persuaded.

The Unlawful Detainer Act (Code Civ. Proc., §§ 1159–1179a) "sets forth procedures 'for landlords and tenants to resolve disputes about who has the right to possess real property.'" (*City of Alameda v. Sheehan* (2024) 105 Cal.App.5th 68, 75 (*Sheehan*), quoting *Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.) "[T]he relevant statutes impose shorter procedural timelines than the ones governing other civil actions." (*Stancil*, at p. 390.) As a result, unlawful detainer proceedings "demand strict adherence to the statutes' procedural requirements." (*Ibid.*)

Under section 1161(2), "a tenant is guilty of unlawful detainer when the tenant continues in possession of a rental property without the permission of the landlord after default in the payment of rent." (*Sheehan, supra*, 105 Cal.App.5th at p. 75.) In such circumstances, "service of a 'valid three-day [notice to] pay rent or quit . . . is a prerequisite to an unlawful detainer action.'" (*Ibid.*) Under section 1161(2), the three-day notice

---

[1] Zolo's notice of appeal indicates it purports to appeal from the judgment and its two posttrial motions. Because Zolo's briefing does not address these motions, we conclude Zolo has forfeited its arguments. (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894–895; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

4

must state in writing the amount of rent due and "the name, telephone number, and address of the person to whom the rent payment shall be made." "[I]f payment may be made personally," then the notice must also include "the usual days and hours that person will be available to receive the payment." (§ 1161, subd. (2); *Sheehan*, at p. 76.)

Due to the summary nature of an unlawful detainer action, "a three-day notice is valid only if the landlord strictly complies with the provisions of section 1161[(2)]." (*Levitz Furniture Co. v. Wingtip Communications, Inc.* (2001) 86 Cal.App.4th 1035, 1038.) A judgment must be reversed when a three-day notice lacks the information required by section 1161(2). (See *Baugh v. Consumers Associates, Ltd.* (1966) 241 Cal.App.2d 672, 674–675.)

Here, Zolo contends reversal is warranted because the notice did not include "the usual days and hours that person will be available to receive the payment." (§ 1161, subd. (2).) Zolo's argument rests on Sobhani's testimony that Quiros could have paid the outstanding rent in person at the Rametto Road address. Zolo does not contend that it attempted to pay the unpaid rent in person at Rametto Road, but could not because of the noninclusion of "the usual days and hours" in the notice.

Here, we must interpret section 1161(2). It states that prior to an unlawful detainer lawsuit, a three-day notice "shall have been served" by the landlord "stating the amount that is due, the name, telephone number, and address of the person to whom the rent payment shall be made, and, *if payment may be made personally*, the usual days and hours that person will be available to receive the payment . . . ." (§ 1161, subd. (2), italics added.) Our review is de novo. (*Blaich v. West Hollywood Rent Stabilization Dept.* (2011) 195 Cal.App.4th 1171, 1175.)

"We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.]  We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' " (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227.)

The trial court below relied on *Hsieh v. Pederson* (2018) 23 Cal.App.5th Supp. 1 in concluding Sobhani's notice complied with section 1161(2).  In *Hsieh*, the appellate division of the superior court reversed a motion for judgment on the pleadings in favor of the defendant tenants.  (*Hsieh*, at p. 3.)  In rejecting the tenants' claim that the notice to quit required "personal delivery" of rent to the plaintiff landowner, *Hsieh* reviewed "the clear language" of section 1161(2) and concluded that "the decision to allow personal payment of the rent, in addition to allowing payment by mail by the tenant, is up to the landlord." (*Hsieh*, at pp. 4, 6, italics omitted.)  It stated, "This is evident from the conditional clause that follows the text in the statute specifying the information that must be included in the notice—the amount of outstanding rent, and the name, telephone number, and address of the person to whom the rent shall be paid.  The conditional clause, which begins with 'if payment *may* be made personally' (italics added), sets forth the additional information that must be included in the notice if the landlord is willing to allow the rent to be personally delivered." (*Hsieh*, at p. 6.)  Because the notice did not contain language indicating payment was required to be made in person rather than by mail, the notice complied with section 1161(2). (*Hsieh*, at p. 6.)

We recognize that *Hsieh* is not binding on this court. But we nonetheless agree with its reasoning and analysis. The statute's plain language is not ambiguous. (*Sheehan*, *supra*, 105 Cal.App.5th at p. 76.) The default manner for payment of rent during the notice to quit period is by mail, not in person. We conclude that the modifier in section 1161(2) stating "if payment may be made personally" indicates a landlord *may* accept payment of rent in person. And if a landlord makes that election, only then must the notice to quit include "the usual days and hours that person will be available to receive the payment." (*Hsieh*, *supra*, 23 Cal.App.5th Supp. at p. 6.)

Turning to Sobhani's notice here, nothing in it indicates Sobhani permitted personal payment of the rent. The notice stated that payment "shall be made to Paree Sobhani at 204 Rametto Road, Santa Barbara, CA 93108, 805-705-3674, in cash or certified funds." Had Sobhani elected to allow personal payment, she would have been required to include "the usual days and hours" that she was available to accept Zolo's payment.

Because Sobhani did not elect to receive payment of the rent personally, the notice complies with section 1161(2). It states the "amount that is due, [and] the name, telephone number, and address of the person to whom the rent payment shall be made." That is all the statute requires. Thus, we reject Zolo's claim that Sobhani's trial testimony that she would have accepted the payment of rent in person rendered the notice defective. Zolo provides no authority to support its contention that a landlord's after-the-fact trial testimony renders a notice invalid where, as here, the notice complies with the plain language of the statute. As noted, the statute is not ambiguous, and we decline to "adopt a strained or absurd interpretation in

7

order to create an ambiguity where none exists." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807.)

Zolo also contends the notice is defective because it does not indicate Sobhani's election to receive the rent "by mail only." But Zolo adds a requirement to section 1161(2) that does not exist. The statute presumes the outstanding rent will be paid via mail, *unless* the notice also states "the usual days and hours" someone is available to accept payment of the rent. "[A] landlord who elects to receive the delinquent rent *by mail only* is simply required to include in the notice the amount of rent due, the name and address of the person to whom the rent payment shall be mailed, and a telephone number for that person." (*Hsieh*, *supra*, 23 Cal.App.5th Supp. at p. 6.) The statute does not require a landlord to indicate that payment is only to be made by mail.

Zolo offers additional reasons why the notice is defective. It contends the notice states payment was to be made "*at* 204 Rametto Road" instead of "*to* 204 Rametto Road," and that it is illogical to expect a tenant to mail hundreds of thousands of dollars via U.S. mail. Again, section 1161(2)'s language is not ambiguous, and Zolo adds more to the statute than it contains. "[A]n appellate court should exercise judicial restraint, stay its hand, and refrain from rewriting a statute to find an intent not expressed by the Legislature." (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1700.) And where the notice to quit does not include "the usual days and hours" that someone is available to receive payment in person, the presumption is that payment is to be made by U.S. mail. We conclude Sobhani's notice complied with section 1161(2). Thus, we do not reach

Sobhani's contention that the parties' lease waived any provision of section 1161(2).

DISPOSITION

The judgment is affirmed.  Respondent shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


BALTODANO, J.


We concur:



GILBERT, P. J.



CODY, J.

9

Jed Beebe, Judge

Superior Court County of Santa Barbara

_____

Law Offices of Ben Gharagozli, Behnam Gharagozli; Law Office of Kevin P. Hermansen and Kevin P. Hermansen for Defendant and Appellant.

Mullen & Henzell, Jared M. Katz and Andrew M. Cox for Plaintiff and Respondent.